[Civ. No. 16146. Second Dist., Div. Three. May 17, 1948.]

MARGUERITE BURNS et al., Appellants, v. JOHN P. SOUSA et al., Respondents.

John A. Jorgenson for Appellants.

Andrew Renetzky and A. V. Muller for Respondents.

SHINN, Acting P. J.—On March 24, 1945, Marguerite Burns, Fritzi Ann Lalis and Olive V. Dunn, owned certain real property in the town of Atascadero, San Luis Obispo County, subject to a life estate in their father, John E. Doran. On that day they leased the premises for five years to John P. Sousa, to be used and occupied in carrying on a cafe, on-sale and off-sale liquor business which had theretofore been conducted by the owners of the property. Sousa evidently acquired the stock-in-trade of the agreed value of $10,218.91. As rental he was to pay John E. Doran $150 per month, and also to the three daughters, at the end of each month, 50 per cent of the profits of the said business and any other business conducted on the premises. The profits were to be computed by deducting from the money actually received during the month the monthly rental paid to Doran, the cost of keeping up the stock-in-trade, and the usual and ordinary expense of the business, the cost of liquor licenses, taxes and insurance, and the cost of repairs. The lease provided that the lessee would keep "perfect, just, and true books of account when each of the items of expenditure incurred in the operation of said businesses shall be set down as well as each and every item of income shall be set down, which said books shall be used in common between the parties to this lease so that either of them may have access thereto without any interruption or

hindrance of the other.'' There were stipulations that John E. Doran should make certain exterior repairs and that the daughters would maintain the carpets and other interior fixtures, and that on the expiration of the term, or sooner termination of the lease, stock-in-trade to the value of $10,218.91 should belong to the lessee and that any excess should be divided one-half to Sousa and the remainder to the three women. There was a provision for termination of the lease in the event of violation of its terms by the lessee. There was attached to the agreement a duly executed certificate of limited partnership between Sousa and the three women under which defendant was general partner and the others limited partners in ownership of the liquor licenses. On the termination of the partnership the latter were to own all liquor licenses. The life estate of John E. Doran was terminated by his death in 1945. On December 9, 1946, Mrs. Burns, Mrs. Lalis, and Mrs. Dunn served on Sousa a written notice of termination of the lease, and demand for possession upon the ground that by the lease ''lessee promised to keep at all times just and true books of account when each of the items of expenditure incurred in the operation of said business shall be set down as well as each and every item of income; and whereas said lessee has failed to perform said covenant and others as set forth in said written contracts and has defaulted in the performance of lessee's promises therein contained,'' and stating, ''now therefore, lessors hereby elect to terminate said lease,'' etc. Sousa refused to agree to the termination of the lease or to surrender possession, and the present action in unlawful detainer was brought by Marguerite Burns and Fritzi Ann Lalis. Olive V. Dunn gave notice that she rescinded and cancelled the notice of termination of lease, so far as she was concerned, she declined to join as a plaintiff, and was named as a defendant. Her interests are identical with those of her two sisters and for convenience we will refer to all three of them as plaintiffs. The complaint alleges that Sousa has not kept books of account as he agreed to do, but that the books he has kept or made accessible to the lessors are imperfect, unjust, incomplete and untrue; that the lessors have been unable to determine therefrom what their share of the profits have been, and they are ''informed and believe that defendant Sousa has paid said lessors less than 50% of the net profits of said businesses.'' Defendant answered and a trial was had before the court. The court found the allegations of the complaint with reference to

defendant's failure to keep book accounts as agreed to be untrue; that it was not true that plaintiffs could not determine therefrom what their profits had been; that it was not true that the books were inaccessible to plaintiffs; and not true that defendant had paid them less than 50 per cent of the net profits of the businesses. It was also found that plaintiffs by their conduct had waived strict compliance with the terms and conditions of said contract. Judgment was for defendant. The ground of the appeal is that these findings are unsupported by the evidence.

For an undisclosed time preceding the lease to Sousa, the business had been operated by Mr. Doran and his three daughters. The sources of revenue were the cafe, the liquor business, and 50 per cent of the returns from music machines, slot machines and punchboards. The coin machines and punchboards were gambling devices.

The court received exhaustive evidence as to the methods followed by defendant in keeping books and records reflecting his business operations. All of the plaintiffs testified, defendant was examined at length, and accountants who had examined the books and records at the instance of both parties testified as to defendant's bookkeeping system and as to the results of their audits of the same. Defendant had a cash register in the cocktail lounge and another in the cafe, both of which had been furnished by plaintiffs, and neither of which had a recording tape. Defendant kept a book in his place of business in which he recorded sales of various types of merchandise, such as hard liquor, wines, etc., sales of which were required to be segregated. He entered in this book all of his cash disbursements and receipts, except as hereinafter noted. He kept all of his invoices and bills payable. From time to time he deposited in bank all cash on hand. Periodically he took his records, including all invoices, to Lucille McGowan, a bookkeeper of San Luis Obispo. Mrs. McGowan kept a set of books from defendant's daily cashbook, the invoices, and information received from Sousa as to his income from various sources. It was on the basis of these accounts that sales and income taxes were reported and paid. Receipts from slot machines for 1945 were not put in the book until later, but were reported with the 1946 income. Partnership income returns were made by defendant and copies were furnished to each of the three plaintiffs. The testimony of the accountants was to the effect that these returns checked with the books kept

by Mrs. McGowan. The original invoices, which Mrs. Mc-Gowan had retained, were checked with the books and were found to correspond. As a result of their examinations the accountants discovered, and they testified to, no substantial inaccuracies or lack of completeness in defendant's bookkeeping, except that they found, from an examination of the books checks, and other memoranda, that defendant had expended from the business $4,181.94, in excess of the amount received by the business as shown on the books. After plaintiffs' accountant had examined the books, and defendant's deposition had been taken in another action, defendant caused to be entered on the books an item of $4,122.75 and an item of $663.31, the former being receipts from slot machines and the latter additional receipts from the cafe. We find an explanation of this matter in the testimony of defendant. According to defendant, Mr. Doran had explained to him when he took over the business that it had been the practice not to keep permanent records of machine receipts. Defendant did keep memoranda of these receipts and they were produced for the period subsequent to November, 1946. However, defendant testified that he deposited the income from the slot machines in the bank and divided the money with plaintiffs, whereas the income from the punchboards was divided with plaintiffs periodically, although it was never deposited in bank. We do not find in the testimony of plaintiffs any denial of defendant's claim that slot machine and punchboard money had been handled in the past in the same manner it was handled by defendant, that is, without recording it in the account books. Mrs. Dunn testified that she and Mrs. Lalis knew how defendant was keeping his books; that the proceeds from the punchboards had always been distributed in cash; that she had been told by defendant that he was putting the slot machine money in the bank and dividing it without keeping any book record of it, and that this procedure met with her approval.

According to the testimony of the accountants, the computations of monthly profits would have reflected more accurately the true profits if consideration had been given to fluctuations in inventories or if there had been regular mark-ups of supplies purchased, but plaintiffs' accountant, Mr. Boyce, testified that the contract called for accounting on a cash basis and that the books did truthfully portray the receipts and expenditures of the business, and further that in reconciling the figures shown on the books with the sales of merchandise,

he found only .007 of 1 per cent of error. Defendant's expert testified that the books of account of ''purchases, sales and inventory, are absolutely the next thing to perfect,'' and that any ordinary person could ascertain from Mrs. McGowan's books in a very reasonable time the amount of monthly profits.

We do not find that plaintiffs ever made objection, and we do not understand that they now seriously object, to the practice followed by defendant of not setting forth in his account books the sums received from slot machines and punchboards. It would not be difficult to understand that they were content to have their partner or coadventurer, assume the responsibility of handling these gambling devices and to receive their share of the proceeds with a minimum of recorded evidence showing their participation in the gambling profits. If they were not satisfied to trust defendant in the gambling department of the business they should not have taken him in as a business associate, or should have had one of their number on hand to assist in the division of the money when the machines were opened. No point is made respecting defendant's testimony that for a time he derived revenue of 25 cents per player in poker games on the premises, but discontinued the practice when Mrs. Burns demanded a share of the money.

Mrs. Burns, assisted by one O'Callahan, made an examination of Mrs. McGowan's books. They discovered, so they testified, that there was some $1,500 unaccounted for. They reported this fact to defendant and he told them that the $1,500 was in the bank. It does not appear that the money was not in the bank or was not properly accounted for. Defendant made a practice, from month to month, of estimating the amount he should keep on hand for the purchase of supplies and other expenses. It does not appear that he made any secret of this practice, or that plaintiffs made any objection to it. Neither does it appear that they ever made any objection when the profits were distributed as to the method by which they had been computed. It was to their interests that the business have on hand sufficient money to replenish liquor stocks and to meet current operating expenses.

From our analysis of the testimony we are satisfied that it fully justified a finding that the accounts kept by defendant truly and correctly reflected the amounts of his receipts and expenditures in the manner required by the contract, with the sole exception of the receipts from the gambling devices. The finding that plaintiffs had waived strict

compliance with the terms and conditions of the contracts is amply supported by the evidence to which we have referred. There was no failure to comply with the terms of the lease unless it consisted of the omission to note on the books the amounts of gambling profits and their omission was unobjectionable to plaintiffs. Defendant's books and records were open to them at all times. They were shown to be complete and correct in all particulars, except in the respects noted. Since the money from the gambling devices was divided with plaintiffs monthly, or whenever they called for it, plaintiffs undoubtedly understood that there was no necessity for making book entries of these sums. The inference is clear that plaintiffs knew how defendant was handling this part of the business and that they approved of it.

The trial involved nothing but the decision of issues of fact as to whether defendant kept true and complete books of account which were open to the inspection of plaintiffs. The findings on these issues being fully supported by the evidence may not be disturbed. The court properly concluded that plaintiffs were entitled to no relief.

The judgment is affirmed.

Vallée, J. pro tem., concurred.

WOOD, J.—I concur in the judgment, and in the opinion wherein it is held that the evidence justified a finding that defendant kept correct accounts in the legitimate part of the business. As to the receipts from the gambling devices, the parties are not entitled to any consideration at all by the court as to the state of their accounts in those illegal transactions.

Appellants' petition for a hearing by the Supreme Court was denied July 15, 1948.